IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LANE D. SIMION,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 14-cv-1129-CJP[1] |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Lane D. Simion, represented by counsel, seeks judicial review of the final agency decision denying him Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

**Procedural History**

Mr. Simion applied for benefits in January 2011, alleging disability beginning on June 17, 2009. (Tr. 8). After holding an evidentiary hearing, ALJ Kevin R. Martin denied the application on August 15, 2013. (Tr. 8-18). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c).   See, Doc. 14.

1

**Issues Raised by Plaintiff**

Plaintiff raises the following points:

1. The ALJ erred in the weight he afforded to the opinions of treating physician Dr. Cesar Yu.

2. The RFC assessment was not supported by substantial evidence.

3. The ALJ's credibility assessment was legally insufficient.

4. The ALJ erred in giving no weight to the numerous third-party statements.

**Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes.[2] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20

---

[2] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.

2

C.F.R. §§ 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be

found disabled if he or she suffers from a listed impairment, determined at step three.  If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job.  *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).  *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.  It is important to recognize that the scope of review is limited.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).  Thus, this Court must determine not whether Mr. Simion was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.  See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).

The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  In reviewing for "substantial

evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

ALJ Martin followed the five-step analytical framework described above. He determined that Mr. Simion had not been engaged in substantial gainful activity since the alleged onset date and that he was insured for DIB through September 30, 2015. He found that plaintiff had severe physical impairments of degenerative disc disease, COPD, and hypertension. The ALJ further determined that these impairments do not meet or equal a listed impairment.

The ALJ concluded that Mr. Simion had the residual functional capacity (RFC) to perform work at the light exertional level, limited to only occasional climbing of stairs and ramps; no climbing of ladders, ropes or scaffolding; frequent balancing; occasional stooping, kneeling, crouching, and crawling; and no concentrated exposure to respiratory irritants and poor ventilation.

Based on the testimony of a vocational expert, the ALJ found that plaintiff was not able to do his past work. However, he was not disabled because he was able to do other jobs which exist in significant numbers in the regional and national economies. (Tr. 8-18).

**The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Agency Forms**

Plaintiff was born in 1960 and was 48 years old on the alleged date of onset. (Tr. 139). He said that he was unable to work because of sciatica, high blood pressure and reduced lung capacity. He was 5'9" tall and weighed 235 pounds. (Tr. 143).

He worked in a coal mine doing belt maintenance from 1984 through June 17, 2009. (Tr. 144).

Plaintiff stated in a Function Report that he was unable to lift or carry heavy objects and he was unable to climb stairs or ladders, squat or bend. He could not walk more than 100 feet without resting. He lived with family. He made simple meals like sandwiches or canned soup. He did laundry and ran the dishwasher. He did not do other house or yard work because it was too physically demanding. He also alleged difficulty in sitting, standing, walking, and reaching. He sometimes used a cane, but it had not been prescribed by a doctor. (Tr. 157-165).

2. **Evidentiary Hearing**

Mr. Simion was not represented at the evidentiary hearing on June 27, 2013. The ALJ explained his right to representation, and he stated that he wanted to

proceed without a representative. (Tr. 26-28).

Plaintiff testified that he lived with his wife and 21 year old son. His wife was employed outside the home. (Tr. 32). He said he did not use a cane or a walker. He had not worked since his alleged onset date. (Tr. 34). He left his job in the coal mine because of back pain. (Tr. 37).

Plaintiff's wife did odd jobs and she had a greenhouse business that sold plants in the spring. There was no health insurance available to him through her work. (Tr. 46).

Mr. Simion testified that his insurance ran out over a year before the hearing. He had not had physical therapy for over a year because he could not afford it. He stated, "But everything I do now is out of my pocket, and I try to do – you know . . . . the minimum possible." (Tr. 39). He had seen a pain management doctor, but had not been back to him for a couple of years. He said, "I've just been going back to my regular doctor because I can't afford that. . . . I just go to my regular doctor and get pain medication and use as little as possible." (Tr. 40-41). He also testified that his primary care physician wanted to do testing to evaluate numbness in his left arm, but he could not afford it. (Tr. 45-46).

Plaintiff's wife had her greenhouse business for about 15 years. Mr. Simion helped a little bit by transplanting some plants the prior spring. (Tr. 47-48).

Plaintiff testified that he had pain in his left hip and down into the bottom of his foot. He also had numbness in his left arm. As far as he knew, plaintiff had not been evaluated for surgery on his back. (Tr. 41-42). He also had a lung

7

problem and had shortness of breath every day. He used an inhaler. (Tr. 49).

A vocational expert (VE) also testified. The ALJ asked the VE a hypothetical question that corresponded to the ultimate RFC findings. The VE testified that such a person would not be able to do plaintiff's past work. However, there are other jobs in the regional and national economies which he could do. Examples of such jobs are hand packer, production work assembler, and unskilled cleaner. (Tr. 62-63).

The VE testified that a worker who was off-task for 20% of the day would not be able to perform any jobs. (Tr. 63).

### 3. Medical Records

Mr. Simion received much of his medical treatment from Dr. Cesar Yu. Dr. Yu's notes are hand-written and difficult to read.

On June 25, 2009, plaintiff saw Dr. Yu for back pain and left leg pain which had started a few days earlier. (Tr. 270). On July 8, 2009, plaintiff told Dr. Yu he had been under a chiropractor's care since June 30, 2009. Dr. Yu noted positive straight leg raising. The assessment was low back pain and sciatica. Dr. Yu prescribed medication. (Tr. 269).

An MRI of the lumbosacral spine was done on July 9, 2009. This study showed facet arthropathy, disc degeneration and disc desiccation at several levels, but no definite impingement or herniation. (Tr. 281).

Dr. Chu again noted positive straight leg raising on August 7, 2009. He prescribed physical therapy. (Tr. 267).

8

Mr. Simion attended physical therapy sessions from August through November 2009. (Tr. 203-215). He participated in pelvic traction and trunk flexion exercises. (Tr. 205). Notes indicate that he had increased pain after riding a lawn mower (Tr. 209, 211, 212), he had low back pain after walking up and down stairs (Tr. 209), and his pain increased "quite a bit" with activities such as climbing a ladder and spreading plastic on his greenhouses (Tr. 207). On the last visit, the therapist noted that he was "not progressing" and that he needed a consultation with a spine specialist. (Tr. 205).

Mr. Simion came to Dr. Yu with "paperwork" on October 6, 2009. Dr. Yu again noted positive straight leg raising. (Tr. 266). On November 22, 2009, Dr. Yu noted paravertebral tenderness and positive straight leg raising. (Tr. 265).

Dr. Yu referred plaintiff to the Orthopedic Center of Southern Illinois. He was seen there on November 24, 2009, by Dr. Michael Templer. Mr. Simion said he had pain in his low back and down his left leg, along with burning in his left foot for the past 6 months, and it was getting worse. On exam, he was 5'9" and weighed 220 pounds. His gait was normal. He was not in respiratory distress. Straight leg raising and Patrick's test were negative. Pace was positive on the left. The diagnosis was piriformis syndrome.[3] Dr. Templer prescribed hydrocodone for pain and showed him some stretches for his piriformis muscle. He noted that it

---

[3] "Piriformis syndrome is a nondiscogenic cause of sciatica from compression of the sciatic nerve through or around the piriformis muscle." A positive Pace sign on examination may be an indication of piriformis syndrome. See, http://journals.lww.com/acsm-csmr/Fulltext/ 2015/01000/ Piriformis_Syndrome___A_Cause_of_Nondiscogenic.12.aspx, visited on February 11, 2016.

was unclear whether his radicular symptoms were coming from the back or from the piriformis muscle. (Tr. 223-224). Plaintiff returned in December 2009. Dr. Templer reviewed his MRI film, noting it showed degenerative disc disease and facet arthropathy without significant herniation or neural impingement. Mr. Simion was taking Lortab, which helped with his pain and did not impair him or give him significant side effects. Dr. Templer again noted that it was unclear whether his symptoms were coming from his back or his piriformis muscle. He discussed trying Lyrica or Neurontin, but plaintiff said he had read about the side effects of those drugs and did not want to take anything that would impair him. The doctor recommended a trial of a steroid Dosepak. (Tr. 222).

Plaintiff returned to Dr. Templer in January 2010. He reported that the steroid Dosepak helped somewhat. The doctor recommended an epidural steroid injection, but Mr. Simion was "resistant to having any procedures done at this time." He was also resistant to trying Neurontin or Lyrica because of side effects. (Tr. 220).

In March, 2010, Dr. Templer again noted that it was unclear whether his pain was coming from his back or his piriformis muscle. He started plaintiff on a trial of Lyrica. (Tr. 219). In August, 2010, plaintiff reported that Lyrica made him feel sleepy and "out of it." Physical exam was normal. Dr. Templer increased his dosage of hydrocodone and started him on a trial of Flexeril. (Tr. 218).

Dr. Yu noted negative straight leg raising in August 2010. (Tr. 262).

When plaintiff returned to Dr. Templer in December 2010, he continued to

complain of pain in the low back and left leg. He was taking hydrocodone which improved his ability to function normally. Dr. Templer noted that "The patient continues to work." Physical exam was normal. Mr. Simion was again "not interested in having any injections." (Tr. 217).

Plaintiff saw Dr. Yu for follow-up and to have papers filled out in March 2011. He told Dr. Yu that he was still having low back pain with difficulty walking at times. He said he had not worked for 2 years. Dr. Yu noted positive straight leg raising. (Tr. 261).

Dr. Adrian Feinerman performed a consultative examination on March 16, 2011. Physical exam was normal in all respects. (Tr. 240-248).

Dr. Yu noted positive straight leg raising in July 2011. The assessment was sciatica, left. (Tr. 260).

Mr. Simion underwent pulmonary function testing on January 26 and 27, 2012. On the first day, there were 4 tests, and 1 was acceptable. The interpretation was "very severe obstruction." Someone hand-wrote "severe obstructive airways disease" on the report. (Tr. 325). On the second day, 2 tests were done, and none were acceptable. The typewritten interpretation was "normal spirometry." Someone hand-wrote "moderate obstructive airways disease." (Tr. 322).

Mr. Simon saw Dr. Yu on January 20 and January 26, 2012. His notes are almost completely illegible for these visits. (Tr. 306-307). The next visit was in September 2012 for a medication refill. (Tr. 337). In October 2012 and January

11

2013, the notes are very difficult to read, but Dr. Yu appears to state that Mr. Simion was doing fairly well except for low back pain. (Tr. 335-336).

### 4. Dr. Yu's Opinions

Dr. Yu provided 3 written opinions.

In November 2009, Dr. Yu filled out a form entitled "Attending Physician's Statement of Disability." This form was to be returned to The American Coal Company. Dr. Yu indicated a primary diagnosis of low back pain with left sciatica. He noted objective findings of left paravertebral tenderness and positive straight leg raising on the left. He indicated that plaintiff had unspecified restrictions in weight-bearing and climbing and that he may need surgery or lumbar steroid shots. He said that plaintiff was unable to work temporarily due to back pain. (Tr. 263-264).

In a letter dated September 7, 2012, Dr. Yu stated that plaintiff had chronic sciatica, an enlarged heart on the right side due to his limited lung function, and severe COPD with obstruction. He wrote, "Please consider him for disability." (Tr. 328).

Dr. Yu wrote an identical letter on May 31, 2013, but his time he wrote, "Please consider him for disability [as] he cannot work due to his health conditions." (Tr. 329).

### 5. Non-examining State Agency Consultants' Opinions

Based upon a review of the records, state agency consultant Julio Pardo,

12

M.D., assessed plaintiff's RFC in March 2011. He concluded that plaintiff could do light work, limited to frequent climbing of ramps and stairs and occasional climbing of ladders, ropes and scaffolds. It appears that Dr. Pardo had a copy of Dr. Yu's November 2009 report, but not of his office notes. (Tr. 249-256).

A second state agency consultant agreed with Dr. Pardo in September 2011. In his narrative comments, this doctor noted that straight leg raising was negative and that Mr. Simion refused steroid injections. (Tr. 302-304).

## Analysis

The Court turns first to the credibility determination.

Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005), and cases cited therein. The credibility findings of the ALJ are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).

SSR 96-7p requires the ALJ to consider a number of factors in assessing the claimant's credibility, including the objective medical evidence, the claimant's daily activities, medication for the relief of pain, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms."

SSR 96-7p, 1996 WL 374186, at *3. "[D]iscrepancies between objective evidence and self-reports may suggest symptom exaggeration." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008).

The ALJ is required to give "specific reasons" for his credibility findings. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). It is not enough just to describe the plaintiff's testimony; the ALJ must analyze the evidence. *Ibid.* See also, *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir., 2009)(The ALJ "must justify the credibility finding with specific reasons supported by the record.")

Plaintiff argues that the ALJ committed two errors in assessing his credibility. First, the ALJ concluded that the medical evidence did not support plaintiff's allegations, but the ALJ ignored medical evidence favorable to plaintiff's claim.

The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

Here, ALJ Martin concluded that the objective medical evidence did not support plaintiff's allegations, but he cherry-picked the medical evidence. He highlighted normal findings in Dr. Templer's notes but omitted any mention of abnormal findings. For example, the ALJ described Dr. Templer's March 2010 exam as "essentially unremarkable." (Tr. 13). In fact, on that exam, Dr. Templer found positive straight leg raising on the left, positive Pace sign and positive FABIR

14

on the left. (Tr. 219). Similarly, the ALJ highlighted normal findings in Dr. Yu's office notes, Tr. 13, but failed to note the numerous instances of positive straight leg raising, noted in the Court's review of the medical evidence above.

The Commissioner responds that the ALJ was not required to discuss every piece of evidence. See, Doc. 27, pp. 7, 15. That is true as a general rule, but the rule is unavailing where, as here, the ALJ highlights evidence that supports his conclusion and ignores evidence supportive of plaintiff's claim. A "'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence." *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014).

The ALJ's second error in assessing plaintiff's credibility is that he apparently did not consider plaintiff's testimony that he had no insurance and could not afford medical treatment.

An ALJ may not conclude that a claimant is exaggerating his limitations based on lack of medical treatment or failure to take medication without taking into account the claimant's inability to afford treatment. *Garcia v. Colvin*, 741 F.3d 758, 761-762 (7th Cir. 2013), citing SSR 96-7p, 1996 WL 374186, at *7-8. "Inability to pay for medication . . . may excuse failure to pursue treatment." *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009).

An ALJ may not "rely on an uninsured claimant's sparse treatment history to show that a condition was not serious without exploring why the treatment history was thin." *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014).

In evaluating plaintiff's credibility, ALJ Martin stated that his "treatment

15

history also calls into question his credibility." He noted that plaintiff had seen only his primary care physician for the past two and a half years. (Tr. 14). However, Mr. Simion clearly testified at the hearing that he had no insurance and could not afford medical treatment. The ALJ acknowledged that Mr. Simion said that he was unable to afford more physical therapy (Tr. 12), but he gave no indication that he considered plaintiff's finances in concluding that his sparse treatment history undermined his credibility.

The erroneous credibility determination requires remand. "An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding." *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014). Here, plaintiff's testimony is not incredible on its face, and it is clear that the decision depended in large part on plaintiff's credibility.

The ALJ's selective consideration of the medical evidence also affected his assessment of plaintiff's RFC. As was described above, the ALJ highlighted benign findings by both Drs. Templer and Yu, while ignoring abnormal findings by both doctors. In view of the ALJ's selective and incorrect review of the medical records, the Court finds that the ALJ failed to build the required "logical bridge" from the evidence to his conclusions as to plaintiff's RFC. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).

The Court also agrees that the ALJ erred in determining how much weight to afford to Dr. Yu's opinions.

16

The opinions of treating doctors are not necessarily entitled to controlling weight. Rather, a treating doctor's medical opinion is entitled to controlling weight only where it is supported by medical findings and is not inconsistent with other substantial evidence in the record. *Clifford v. Apfel*, 227 F.3d 863 (7th Cir. 2000); *Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001).

20 C.F.R. §404.1527(c)(2) states, in relevant part:

Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

Obviously, the ALJ is not required to accept a treating doctor's opinion; "while the treating physician's opinion is important, it is not the final word on a claimant's disability." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996)(internal citation omitted). If is the function of the ALJ to weigh the medical evidence, applying the factors set forth in §404.1527. Supportability and consistency are two important factors to be considered in weighing medical opinions. In a nutshell, "[t]he regulations state that an ALJ must give a treating physician's opinion controlling weight if two conditions are met: (1) the opinion is supported by 'medically acceptable clinical and laboratory diagnostic techniques[,]' and (2) it is 'not inconsistent' with substantial evidence in the record." *Schaaf v. Astrue*, 602

F.3d 869, 875 (7th Cir. 2010), citing §404.1527.

However, in weighing the medical opinions, the ALJ is not permitted to "cherry-pick" the evidence, ignoring the parts that conflict with his conclusion. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009). While he is not required to mention every piece of evidence, he "must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position." *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000). Further, he must give a "sound explanation" for his decision to reject a treating doctor's opinion. *Roddy v. Astrue*, 705 F.3d 631, 637-638 (7th Cir. 2013).

Here, ALJ Martin gave little weight to Dr. Yu's opinions because he thought they were inconsistent with the objective medical evidence. He again highlighted Dr. Templer's "benign findings," as well as the "essentially normal pulmonary function test." (Tr. 15). Because of his selective view of the medical evidence, his conclusion that Dr. Yu's opinions were inconsistent with the medical evidence cannot stand. And, the handling of the pulmonary function testing is problematic because the ALJ concluded that the typewritten conclusion on the record from the second day of testing overrode the handwritten notation stating "moderate obstructive airways disease." See, Tr. 14. This was error. The ALJ is not a doctor, and he was not competent to interpret the results in this way. See, *Stage v. Colvin*, __ F3d __, 2016 WL 492333, at *4 (7th Cir. Feb. 9, 2016).

The Commissioner argues that Dr. Yu's opinions did not constitute "medical opinions" because they were nothing more than statements that plaintiff was

18

disabled or unable to work. Therefore, according to the Commissioner, the ALJ was not required to analyze them under 20 C.F.R. §404.1527(c). See, Doc. 27, pp. 5-6. Because the ALJ did not rely on this as a reason to reject Dr. Yu's opinion, the Commissioner's argument violates the *Chenery* doctrine. *Hanson v. Colvin*, 760 F.3d 759, 762 (7th Cir. 2014)("We are particularly concerned about the Chenery violations committed by the government because it is a recurrent feature of the government's defense of denials of social security disability benefits, as this court has noted repeatedly.")

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Mr. Simion was disabled at the relevant time or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Lane D. Simion's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE: February 12, 2016.**

                                **s/ Clifford J. Proud**
                                **CLIFFORD J. PROUD**
                                **UNITED STATES MAGISTRATE JUDGE**